IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JASON LEE NIEMAN,                      )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        No. 11-3404
                                       )
GRANGE MUTUAL CASUALTY                 )
COMPANY, INTEGRITY MUTUAL              )
INSURANCE COMPANY AND                  )
CINDY HEINDEL, INDIVIDUALLY            )
AND AS AN EXECUTIVE OFFICER            )
OF INTEGRITY MUTUAL                    )
INSURANCE COMPANY;                     )
CRITERION EXECUTIVE SEARCH             )
OF FLORIDA, INC.; MICHAEL              )
("MIKE") TINGLEY, INDIVIDUALLY)
AND AS AN OFFICER AND/OR               )
EMPLOYEE OF CRITERION                  )
EXECUTIVE SEARCH, INC.,                )
                                       )
            Defendants.                )

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Plaintiff Jason Lee Nieman has filed a Pro Se Complaint, wherein he

asserts a number of claims pursuant to Title VII, 42 U.S.C. §§ 2000e <u>et</u>

<u>seq.</u>, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and the

Age Discrimination and Employment Act, 29 U.S.C. §§ 621 et seq. The Plaintiff has also asserted claims pursuant to the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.. The Court now considers several Motions to Dismiss filed by the Defendants. Pending also are the Plaintiff's Motion for Sanctions and his Motion to Strike the Opposition of the Defendants to his Motion for Sanctions.

## I. Motion of Integrity Mutual Insurance Company

Defendant Integrity Mutual Insurance Company ("Integrity") has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiff's Complaint. Integrity contends that Plaintiff cannot state a plausible claim for age discrimination or retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII, 42 U.S.C. § 1981, or the Illinois Human Rights Act ("IHRA").

At this stage, the Court accepts as true all of the facts alleged by the Plaintiff and draws all reasonable inferences therefrom. See Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). "[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled

to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis." <u>Maddox v. Love</u>, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation marks omitted). Courts must consider whether the complaint states a "plausible" claim for relief. <u>See</u> <u>id.</u> The complaint must do more than assert a right to relief that is "speculative." <u>See</u> <u>id.</u> However, the claim need not be probable: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." <u>See</u> <u>Independent Trust Corp. v. Stewart Information Services Corp.</u>, 665 F.3d 930, 935 (7th Cir. 2012) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." <u>Id.</u> The allegations of a pro se plaintiff are more liberally construed than are complaints which are drafted by lawyers. <u>See</u> <u>Alvarado v. Litscher</u>, 267 F.3d 648, 651 (7th Cir. 2001).

Specifically, Integrity asserts that the claims it rejected the Plaintiff's employment action because of his age in violation of the ADEA (Count I)

and the IHRA (Count VII) should be dismissed with prejudice because he cannot plead that Integrity actually knew his age when it rejected his application for employment. The Plaintiff does not plead that Integrity or Defendant Cindy Heindel, the Vice President of Human Resources, had actual knowledge of his age. Rather, the Complaint suggests that the Defendants were aware of the Plaintiff's age, based on the inclusion of the year he graduated from college (1989) on a business networking site. Integrity contends that Plaintiff never pled that it or Heindel actually reviewed his LinkedIn[1] profile, had knowledge of the date he graduated from college, or that Integrity actually determined the Plaintiff's age.

Although Integrity claims that Heindel could not have reviewed his LinkedIn profile, the Plaintiff alleges in his Response that during telephone interviews, Heindel did inquire about and confirm the year that Plaintiff and the candidate who was selected for the position each earned their degrees. According to the Complaint, the Plaintiff's interview was

---

[1]LinkedIn, which launched on May 5, 2003, describes itself as the "World's Largest Professional Network," with over 135 million members in over 200 countries and territories as of November 3, 2011. See www.linkedin.com/about.

4

conducted in February 2010. It is not difficult to determine that someone who graduated from college in 1989 probably was over the age of 40 in 2010. Given the Plaintiff's pro se status, the Court concludes that this is enough to place Integrity on notice that he is subject to the protection of the laws against age discrimination. The Plaintiff has also alleged that the candidate selected for the position obtained his degree in 1994. A person who was 22 at that time would have been under 40 in 2010. At this stage, the pro se Plaintiff has also sufficiently alleged that employees outside the protected class were treated more favorably.

Integrity also alleges the Plaintiff's retaliation claims pursuant to Title VII (Count II), § 1981, and the IHRA should be dismissed because the Plaintiff does not allege: (1) that Integrity actually was aware of his "protected activity;" and (2) the nature of his "protected activity." In his Complaint, the Plaintiff alleges that around October 2009, he became aware that an internet search "would provide specific information as to the Plaintiff, the prior action, the Defendants, and the nature of this case," which the Plaintiff refers to as his "protected conduct." See Compl. ¶ 20.

The Plaintiff further alleges he "knows that it is highly common practice for employment recruiters, human resources professionals, hiring managers, and other related parties to 'Google' potential employees or job applicants." See Compl. ¶ 20.

Integrity contends that, based on this subjective assertion, the Plaintiff "presumes" every employer where he has applied for a job has learned of his protected conduct, "and in some cases would likely use it as an unlawful disqualification or discount factor as to his candidacy." See Compl. ¶ 20. Integrity further asserts that Plaintiff's Complaint references an exhibit which arguably suggests that Plaintiff filed a lawsuit against Nationwide Mutual Insurance Company. It contends that Plaintiff has not identified any "protected conduct" and that his conclusion that he engaged in such conduct is not enough to defeat a motion to dismiss.

The Plaintiff claims that although Integrity denies using the internet to research job applicants like him, it does not assert that it was not made aware of the alleged protected conduct by other means. The Plaintiff further suggests that Integrity's employment agent was somewhat aware of

his previous protected conduct.

Integrity correctly argues that the allegations in the Plaintiff's Complaint which pertain to "protected conduct" are highly speculative. It appears that Plaintiff is alleging that any potential employer could possibly have learned of the Plaintiff's "protected conduct" by conducting an internet search and refused to hire him for that reason. It is unclear whether the Plaintiff has any basis for believing this other than a subjective belief. However, in considering a claim which the defendants argued made no sense and was based on "vague aspersions, conclusory statements, and supposed 'wrongful' conduct," the Seventh Circuit observed that those are matters to be considered at the summary judgment stage and not when ruling on a motion to dismiss. See Virnich v. Vorwald, 664 F.3d 206, 213 (7th Cir. 2011). This is particularly true given the Plaintiff's pro se status, The Court will Deny Integrity's Motion to dismiss the retaliation claims.

Additionally, Integrity contends that Plaintiff's claims it violated the IHRA (Counts VII and VIII) should be dismissed because Plaintiff failed to exhaust his administrative remedies under the IHRA and Integrity is not

an employer under the IHRA.

Integrity asserts that Plaintiff's charge of discrimination, which is attached to the Complaint, was cross-filed with the EEOC and the Illinois Department of Human Rights. See Compl. ¶ 4. However, based on Exhibit A of the Complaint, Integrity alleges that Plaintiff's charge of discrimination was cross-filed with the Wisconsin Equal Rights Division because Integrity is a Wisconsin employer and Plaintiff was applying for a job in Wisconsin. Therefore, Integrity argues that Plaintiff cannot pursue claims under the IHRA because of his failure to exhaust remedies.

In response, the Plaintiff claims that Plaintiff filed the original charge with the Chicago, Illinois office of the EEOC. Subject to its own discretion, the EEOC chose to transfer the matter to the Milwaukee, WI office for investigation. The Plaintiff points to 775 ILCS 5/7A-102( A-1)(1), which provides in part, "If a charge is filed with the Equal Employment Opportunity Commission (EEOC) within 180 days after the date of the alleged civil rights action, the charge shall be deemed filed with the Department on the date filed with the EEOC." Based on this language, the

Plaintiff contends the charge was automatically filed. The IHRA does not require that a charge actually be investigated by the Illinois Department of Human Rights.

The Court is unable at this time to conclude that Plaintiff's claims under the IHRA are deficient and subject to dismissal.

Based on the foregoing, Integrity's Motion to dismiss will be Denied.

## II. Motion of Defendant Grange Mutual Casualty Company

In support of its Motion, Defendant Grange Mutual Casualty Company ("Grange") has adopted and incorporated by reference each of the arguments set forth in Integrity's Memorandum in support of its Motion to Dismiss. To the extent those arguments are incorporated, Grange's Motion is Denied for the same reasons.

Grange also asserts it should be dismissed with prejudice because the Plaintiff has not and cannot plead that Grange was his prospective employer. It cannot be liable for alleged employment discrimination by Integrity solely because the Plaintiff alleges that Grange is Integrity's owner and/or successor in interest. Each statute on which the Plaintiff relies

requires that Grange act as the employer to have liability for employment-related decisions.

Grange contends that Plaintiff does not plead any facts tending to show that it was involved in Integrity's decision to reject the Plaintiff's employment application or that Grange otherwise acted as an "employer." It claims that Plaintiff alleges only that Grange is Integrity's owner and/or successor in interest and that one of its employees was involved in the EEOC investigation. <u>See</u> Compl. ¶¶ 8, 39. The allegation that Grange monitored and/or controlled Integrity's activities is, without more, a naked legal conclusion that is not sufficient to withstand a motion to dismiss.

Additionally, the Plaintiff's claims against Grange for violation of the ADEA (Count I), Title VII (Count II), and the IHRA ( Counts VII and VIII) should be dismissed because the Plaintiff failed to name Grange in his EEOC charge. "[A] parent organization not named in the plaintiff's EEOC charge must be dismissed from the suit unless the plaintiff can show that the parent had notice of the claim against it, as opposed to its subsidiary, and had an opportunity to conciliate on its own behalf." <u>Olsen v. Marshall</u>

& Ilsley Corp., 267 F.3d 597, 604 (7th Cir. 2001). The court in Olsen determined that the fact that the plaintiff showed that the parent corporation had notice of the claim against the subsidiary and participated in the administrative proceedings on the subsidiary's behalf were alone insufficient to create a factual dispute to defeat summary judgment. See id.

In response, the Plaintiff alleges that he first recognized the name of Grange executive officer and in-house attorney, Beth W. Murphy, when he saw her name on the "Right To Sue" letter from the EEOC. The Plaintiff claims that he has recognized the "substantial connections" between Integrity and Grange since the EEOC charge was filed. He contends they are "integrated enterprises," and Grange has been on notice since the charge was filed. Moreover, a party not named in an EEOC charge may in some circumstances still be subject to suit. This exception to the general rule applies when "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in the conciliation proceedings aimed at compliance." See Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124,

126 (7th Cir. 1989) (citation omitted).

The Plaintiff claims that Murphy was in position to know of the integration between the organizations. Moreover like Integrity, Grange had opportunities to participate in negotiations or conciliation yet refused those opportunities.

Although the significance, if any, of Grange's role in this case is not entirely clear, the Court concludes that Plaintiff has alleged sufficient facts at this stage to withstand the motion to dismiss. Because it is premature to resolve the factual disputes at this stage of the litigation, Grange's motion will be Denied.

## III. Motion to Dismiss of Defendant Cindy Heindel

The Plaintiff has asserted claims against Heindel for retaliation in violation of 42 U.S.C. § 1981 (Count V) and the Illinois Human Rights Act (Count VIII), and age discrimination in violation of the IHRA (Count VII). Heindel alleges that the claims must be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over her. Heindel claims she does not have the systematic and routine contacts with Illinois to warrant

general jurisdiction. Moreover, her lone telephone call to the Plaintiff, in response to the submission of his resume for a job in Wisconsin, is not enough for this Court to obtain specific jurisdiction over Heindel.

Heindel has submitted her Declaration as an Exhibit to her Motion. A court may receive affidavits in considering a motion to dismiss. See Nelson by Carson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir. 1983). When there is a challenge to personal jurisdiction, the plaintiff bears the burden of establishing its basis for personal jurisdiction. However, the plaintiff is entitled to the benefit of the doubt if comparable levels of proof are advanced, whether by affidavit or another means. See id., see also International Steel Co. v. Charter Builders, Inc., 585 F. Supp. 816, 819 (S.D. Ind. 1984). A plaintiff's allegations as to personal jurisdiction are accepted as true, except where they are refuted by a defendant's undisputed affidavits. See Swanson v. City of Hammond, Ind., 411 F. App'x 913, 915 (7th Cir. 2011); see also International Steel Co., 585 F. Supp. at 819 ("If the party challenging jurisdiction provides affidavits in support of the motion to dismiss, the non-movant may not

simply rest on the allegations of the complaint"). Any factual disputes in the affidavits are resolved in favor of the plaintiff. <u>See</u> <u>Tamburo v. Dworkin</u>, 601 F.3d 693, 700 (7th Cir. 2010).

The Plaintiff asserts that the Court has specific jurisdiction over Heindel pursuant to 735 ILCS 5/2-209(1), (2) and (7). The Illinois' long-arm statute stretches to the extent permitted by the due process clauses of the United States and Illinois Constitutions. <u>See</u> 735 ILCS 5/2-209(c). Heindel contends that Plaintiff cannot establish that subjecting her to personal jurisdiction in this Court is consistent with the due process clauses of either Constitution.

Heindel further asserts that, even if the Court has personal jurisdiction, the Plaintiff's claims should be dismissed under Rule 12(b)(6) because the IHRA does not provide for individual liability for age discrimination or retaliation and Plaintiff has failed to allege a retaliation claim against Heindel in violation of § 1981. Therefore, Heindel contends the claims against her must be dismissed with prejudice.

"The nature of the defendant's contacts with the forum state

determines the propriety of personal jurisdiction and also its scope–that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." <u>Tamburo</u>, 601 F.3d at 701. In order for a court to have general personal jurisdiction over a defendant, the individual must have "continuous and systematic" contacts with the state, even if the action is not related to those contacts. <u>See id.</u> The threshold is high, to the extent that the contacts must be sufficiently extensive so as to approximate physical presence. <u>See id.</u> Occasional visits are not enough for general jurisdiction. <u>See id.</u>

As for specific personal jurisdiction, the defendant's contacts with the state must directly pertain to the challenged conduct or transaction. <u>See id.</u> at 702. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." <u>Id.</u> The exercise of such jurisdiction must also be consistent with traditional notions of fair play and substantial justice as required by

the Fourteenth Amendment's Due Process Clause.  See id.

Heindel further asserts that even if Illinois courts had personal jurisdiction over her, the Plaintiff's claims are barred by the fiduciary shield doctrine because her alleged conduct was motivated by her employment interests and not her personal interests.  See Rollins v. Ellwood, 141 Ill.2d 244, 280 (1990).  Pursuant to Illinois' due process clause, it would be "unfair and unreasonable" to assert personal jurisdiction over an individual in such circumstances.  See id.

Heindel asserts that, as Integrity's Vice President of Human Resources, she was assigned to contact candidates who might qualify for a Vice President of Claims job opening to determine if they warranted an interview at the company's Wisconsin headquarters.  Pursuant to this directive, Heindel reviewed resumes and conducted telephone conferences with certain applicants to determine if Integrity should invite an applicant to Wisconsin for an interview.  Heindel conducted a pre-interview telephone conference with the Plaintiff in or around February 2010.  She rejected the Plaintiff as a viable candidate to continue with Integrity's

interview process.  Heindel states that she performed these duties on behalf of Integrity and did not have any personal interest in the selection of candidates to continue with the interview process.  Moreover, Heindel does not own any shares or have any ownership interest in Integrity.  Because her one telephone call to the Plaintiff was motivated entirely by her employment situation and not her personal interests, Heindel alleges the claims against her should be dismissed pursuant to Rule 12(b)(2).

The Plaintiff claims that he interacted with Heindel directly, in addition to her employment agents.  He asserts that Heindel's contacts with the State of Illinois have been credibly pled as being more numerous and significant than she acknowledges.  The Plaintiff asserts that her contacts with Illinois consist of more than a single telephone call to him in February 2010.  These facts have not been stipulated by the parties.  The Plaintiff asserts that the extent of Heindel's contacts with Illinois is a factual question which is yet to be resolved.  He contends that it is inappropriate for a Defendant to insert extrinsic facts into the analysis at this stage of the proceedings.  Therefore, the Plaintiff asserts that Heindel's argument is

without merit.

Heindel has submitted a Declaration under penalty of perjury. According to the Declaration, Heindel's contacts with Illinois are extremely limited. Heindel has met her burden by refuting the Plaintiff's allegations. The Plaintiff has essentially rested on the allegations in his Complaint, which is insufficient to defeat Heindel's Motion once she has produced a Declaration. Accordingly, the Court concludes that general personal jurisdiction does not lie in Illinois.

The Court further holds as a matter of law that a single telephone interview with an Illinois citizen is insufficient to establish specific personal jurisdiction based on the claims in this case. Based on the allegations of the Complaint and record, the Court concludes that the exercise of such jurisdiction does not comport with traditional notions of fair play and substantial justice and is contrary to the United States and Illinois Constitutions. The Court further notes that based on the current record, it appears Heindel is also protected by the fiduciary shield doctrine.

Because Heindel submitted a Declaration detailing the extent of her

contacts with Illinois, the Plaintiff cannot withstand the Motion to Dismiss by simply pointing to the allegations of his Complaint. The Court will Allow Heindel's Motion to Dismiss for lack of personal jurisdiction.

The Plaintiff has requested leave to amend his Complaint in the event of the dismissal of claims. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires." However, the Court should not allow a plaintiff to amend his complaint when doing so would be futile. See Moore v. State of Ind., 999 F.2d 1125, 1128 (7th Cir. 1993). Because it would obviously be futile in this case, the Court will Deny the Plaintiff's Motion for Leave to Amend his Complaint as to the claims against Heindel.

## IV. Motion to Dismiss of Criterion Executive Search and Tingley

Defendants Criterion Executive Search, Inc. and Michael Tingley, an executive recruiter for Criterion, have filed a motion to dismiss. They claim they lack sufficient contacts with Illinois and seek dismissal pursuant to Rule 12(b)(2). Alternatively, the Defendants seek dismissal for failure to state a claim pursuant to Rule 12(b)(6).

## (A)

The Defendants claim that Plaintiff has not alleged any basis for personal jurisdiction over Criterion or Tingley.  In paragraph 10 of the Complaint, the Plaintiff alleges that Criterion is based in Tampa, Florida and conducts searches for various positions throughout the United States. In paragraph 11, he asserts that Tingley is a Criterion employee based out of Cincinnati.

In support of the motion to dismiss for lack of personal jurisdiction, relying on the affidavit of its Founder and President, Richard James, Criterion states it is an employment agency that is incorporated under the laws of Florida and has its principal place of business there.  Criterion is not licensed, authorized, or registered to do business in Illinois.  Criterion does not have an office in Illinois and does not own or rent any personal property in Illinois.  It has no Illinois employees and does not conduct business in Illinois.

Tingley has also submitted an affidavit.  According to the affidavit, Tingley works for Criterion at an office in Cincinnati, Ohio, where he has

worked for 16 years.  Tingley does not regularly work in Illinois and has no current Illinois clients.  He states that he has not had any clients in Illinois since approximately 2007.  His only contact with Illinois since 2009 has been the limited contact initiated by the Plaintiff when the Plaintiff called him.  After the initial phone call, Tingley states that he and the Plaintiff exchanged emails approximately two times and talked three times on the phone.

In his Response, the Plaintiff asserts that he first met Tingley in 2001 when Tingley worked at another company and advertised a position with an Indiana entity.  He claims that the two subsequently maintained a friendly professional relationship.  Periodically, the Plaintiff would call the Defendant to discuss opportunities or industry happenings.  He claims that he provided "leads" as to possible jobs or potential candidates several times from 2004 to 2011.  The Plaintiff further asserts that Tingley also worked for the Plaintiff's prior employer and had some interactions pertaining to the general nature of the organization or jobs which Tingley was trying to fill.  In December of 2007, Tingley contacted the Plaintiff to ask about a

candidate, an Illinois resident, who Criterion was considering for a role. The Plaintiff claims that this latter assertion seems to contradict the pleadings and/or affidavit of Tingley, even though Tingley stated that he last had an Illinois client in approximately 2007.

The Plaintiff emphasizes that Criterion's website, [www.cesfl.com,](www.cesfl.com) describes the company as a "national executive staffing and recruitment firm." The Plaintiff claims that, when he viewed the website, it included 85 positions, 22 of which were located outside of Florida though none from Illinois. The Plaintiff claims that he performed further internet searches, and discovered at one website two active job searches by Criterion for positions located in Illinois. On another website, the Plaintiff discovered another Illinois-based position which referenced Criterion's President as the contact. The Plaintiff contends that this information contradicts Criterion's assertion that it does not do regular business in Illinois. In a Response [d/e 32], the Defendants claim that the contact for one of these Illinois positions was a Pennsylvania company. As for the other two Illinois positions, Criterion states that it does not recall who was its client.

According to the Affidavit of Richard James, both of those postings are over two years old and are not currently open.

The Plaintiff filed a Supplemental Response [d/e 31] to the Motion to Dismiss, wherein he has included an attachment referencing an Illinois Commercial Underwriting Officer position posted on another website by Criterion and/or Tingley. The Plaintiff claims that this information was likely posted in the last four to six months, which he alleges is inconsistent with statements offered in support of the motion to dismiss. The Plaintiff filed another Supplemental Response [d/e 33], wherein he claims that on March 23, 2012, he found another Chicago-based position advertised for Criterion.

Based on these assertions and the other factual allegations in the Complaint, the Plaintiff claims there is an insufficient basis to dismiss the claims against Criterion for lack of personal jurisdiction. Moreover, he asserts that Criterion used the websites in question to advertise the position at issue (with Integrity and/or Grange) throughout the country.

The Defendants contend that none of the exhibits relied on in the

Plaintiff's Supplements establish that Criterion or Tingley were doing business in Illinois. Rather, the documents show only that they posted positions that were available in Illinois. They contend that in most instances, Criterion and/or Tingley had little or no contact with anyone in Illinois. In Tingley's affidavit attached to the Defendants' Response, he states that his client for the Commercial Underwriting Officer referenced by the Plaintiff was Colony Specialty Insurance Group, which is based in Richmond, Virginia. In approximately August 2011, Tingley received assignments from Colony for positions in Chicago, Illinois and Los Angeles. He received only resumes for the Chicago position and did not conduct any interviews. Tingley states that Colony is not one of his current clients. The Defendants claim that Tingley did not have contact with anyone in Illinois for the posted job. Thus, the Defendants contend that the Plaintiffs' Supplement does not establish that Defendants were engaging in business of a continuous or systematic nature in Illinois.

In asserting that their contacts are not sufficient to establish general jurisdiction, Criterion and Tingley allege they do not have continuous and

systematic contacts with Illinois.  Criterion claims that it has no office or employees in Illinois and rarely does any business in Illinois.  Tingley does not regularly do business in Illinois.  Relying on their affidavits, the Defendants claim that their contacts with Illinois have been very limited. They cite <u>uBID, Inc. v. GoDaddy Group, Inc.</u>, 623 F.3d 421 (7th Cir. 2010), wherein the Seventh Circuit determined that although the GoDaddy Group ("GoDaddy"), which operates the well-known domain registration site GoDaddy.com, had "extensive and deliberate" contacts with Illinois, the district court correctly determined that it was not subject to general jurisdiction.  See <u>id.</u> at 423, 426.  Criterion's and Tingley's contacts with Illinois are much more limited than were GoDaddy's.

The Court concludes that the actions of an employment agency and/or one of its employees of advertising a small number of jobs located in Illinois is insufficient to subject those Defendants, who do not regularly do business in Illinois, to general personal jurisdiction.  It is plainly evident from the Complaint and the Parties' subsequent filings, including the affidavits submitted with the Defendant's Motion and the Parties' various

Supplements, that Criterion and Tingley lack the requisite continuous and systematic contacts with Illinois for general personal jurisdiction. Given these extremely limited contacts, the Court concludes that neither Criterion nor Tingley is subject to general personal jurisdiction in Illinois.

(B)

As for specific jurisdiction, Criterion and Tingley claim it is not "fair and reasonable" to subject them to Illinois courts to answer the Plaintiff's claim. "The due process clause will not permit jurisdiction to be based on contacts with the forum that are random, fortuitous, or attenuated." <u>uBid</u>, 623 F.3d at 426. The facts as alleged by Plaintiff show that he made a phone call from Illinois to Tingley in Ohio. There were a few follow-up calls and emails. There is no contract alleged between the Plaintiff and Criterion or Tingley. Rather, the Plaintiff claims that they were working with Integrity, who was in Wisconsin. According to the Defendants, the limited number of phone calls and emails are not sufficient to establish specific jurisdiction.

In determining that GoDaddy was subject to specific jurisdiction, the

Seventh Circuit emphasized that the company had "thoroughly, deliberately, and successfully exploited the Illinois market." uBID, 623 F.3d at 427. GoDaddy has had an extensive national advertising television campaign, including several years of Super Bowls ads, and has made significant national sales. See id. Its marketing, which has included venue advertising and celebrity and sports sponsorships, has reached hundreds of thousands of Illinois residents, which has resulted in millions of dollars of annual revenue to GoDaddy. See id. Accordingly, the Court concluded that these contacts were enough to establish the requisite minimum contacts with Illinois for claims related to those contacts. See id.

The court rejected GoDaddy's attempts to distance itself from Illinois by describing the market as one among many in a national advertising campaign. See id. at 428. The advertising campaign was obviously designed to reach as many Americans as possible, including the 13 million residing in Illinois. See id. The court determined that this purposeful availment of the Illinois market subjected GoDaddy to personal jurisdiction for any claim arising from its business activities that reach into the state.

See id. at 429.

The record establishes that Plaintiff contacted Tingley at Criterion regarding a position at Integrity. Tingley and the Plaintiff had a few follow-up emails and phone calls. The Parties did not enter into a contract. The Plaintiff has not pointed to any information relating to this claim which would tend to show that Tingley's contacts with Illinois are any more extensive than those few correspondences. Over the years, Criterion has posted thousands of jobs on the internet. A very small percentage of these jobs have been based in Illinois or sought only Illinois candidates. In most of those cases, Criterion's clients have been located in states other than Illinois. The Court is unable to conclude that these Defendants have "thoroughly, deliberately, and successfully exploited the Illinois market." See uBID, 623 F.3d at 427.

Based on the information in the record, the Court holds as a matter of law that Criterion's and Tingley's limited contacts with Illinois are not sufficiently thorough and deliberate to establish the necessary minimum contacts for claims that are related to those contacts. The Court will Allow

the Motion of Criterion and Tingley to dismiss for lack of personal jurisdiction.

The Plaintiff has requested leave to amend his Complaint in the event of dismissal of his claims. The Motion to for Leave to Amend as to Defendant Tingley will be Denied. The Court concludes that any attempt by the Plaintiff to amend his Complaint as to the individual Defendant would obviously be futile.[2] Because futility as to Criterion is a closer question, the Plaintiff will be given until May 29, 2012, to amend his Complaint as to any claims against Criterion.

## V. Motion for Sanctions and Motion to Strike

The Plaintiff has filed a Motion requesting that the Court sanction Criterion, Tingley, and Counsel for those Defendants. He alleges the Defendants have filed pleadings which have contained information that is false. The pleadings were supported by affidavits from Tingley and Richard James, Criterion's president. The Plaintiff asserts that these affidavits have

---

[2]It appears that Tingley, like co-Defendant Heindel, may also be protected from suit pursuant to the fiduciary shield doctrine because the nonresident's contacts with Illinois pursuant to an employment relationship do not subject him to suit. See Rollins, 141 Ill. at 280.

also included information that was not truthful.

Given its ruling on the Motion to Dismiss filed by Criterion and Tingley, the Court is unable to find that the Defendants have filed false pleadings or affidavits. The Court concluded that Criterion's and Tingley's positions that they conducted very limited business in Illinois were well-supported. Accordingly, the Motion for Sanctions will be Denied.

The Plaintiff has filed a Motion to Strike portions of the Opposition to the Motion for Sanctions filed by Criterion and Tingley. This Motion will be Denied as Moot.

Ergo, the Motion to Dismiss of Defendant Integrity Mutual Insurance Company [d/e 8] is DENIED.

The Motion to Dismiss of Defendant Grange Mutual Casualty Company [d/e 11] is DENIED.

The Motion to Dismiss of Defendant Cindy Heindel for Lack of Personal Jurisdiction [d/e 16] is ALLOWED.

The Motion to Dismiss of Defendants Criterion Executive Search of Florida, Inc., and Michael Tingley for Lack of Personal Jurisdiction [d/e 24]

is ALLOWED.

The Claims asserted against Defendants Heindel and Tingley are DISMISSED WITH PREJUDICE.

The Plaintiff's Motion for Leave to file an Amended Complaint as to Defendant Heindel [d/e 21] is DENIED.

The Plaintiff's Motion for Leave to file an Amended Complaint against Defendants Tingley and Criterion [d/e 29] is ALLOWED IN PART and DENIED IN PART. The Motion is DENIED as to Tingley and ALLOWED as to Criterion. Any Amended Complaint is due no later than May 25, 2012.

The Plaintiff's Motion for Sanctions against Defendants Criterion and Tingley and their Counsel, David Holmes, [d/e 35] is DENIED.

The Plaintiff's Motion to Strike Portions of the Defendants' Opposition to the Motion for Sanctions [d/e 38] is DENIED AS MOOT.

Any other pending Motions are DENIED AS MOOT.

ENTER: April 26, 2012

FOR THE COURT:

s/Richard Mills
United States District Judge