E-FILED
Friday, 31 August, 2012  02:42:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JASON LEE NIEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3404 |
| | ) | |
| GRANGE MUTUAL INSURANCE | ) | |
| COMPANY and INTEGRITY | ) | |
| MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

On August 7, 2012, Defendants Grange Mutual Casualty Company (Grange) and Integrity Mutual Insurance Company (Integrity) filed a Motion for Sanctions.  On August 9, 2012, the Defendants filed a Motion for Preliminary Injunction.  Pro Se Plaintiff Jason Lee Nieman has filed a Response to both Motions.  On August 16, 2012, the Court heard oral argument on those Motions.  Mr. Nieman appeared on his own behalf. Attorney Brian P. Paul appeared on behalf of Grange and Integrity.

I.

The Plaintiff filed the Complaint on November 3, 2011, asserting a number of claims against various Defendants.   Several claims and Defendants have since been dismissed. The remaining claims are against Grange and Integrity.   Generally, the Plaintiff asserts that Defendants retaliated against him in violation of Title VII after learning of his prior protected activity.   He also asserts claims pursuant to the Age Discrimination in Employment Act.

Prior to the Hearing, in an Order entered on August 10, 2012, the Court temporarily enjoined the Plaintiff  from doing any of the following without first obtaining leave of Court:

(1) filing any action, complaint, or claim for relief against any witness, Grange Mutual Casualty Company, Integrity Mutual Insurance Company, or any of their affiliates, subsidiaries, agents, insurers, representatives, employees, or attorneys; and

(2) contacting directly Integrity's insurers or any party to this litigation represented by counsel without counsel present.

2

At the Hearing, Mr. Paul stated that between the time that the Defendants filed their Motion for Preliminary Injunction and the Court's entry of a Temporary Injunction, Mr. Nieman filed another EEOC charge against Integrity and its Counsel, supplemented his criminal charges and professional ethics complaints, and sent a Rule 11 letter to Counsel stating that his emails were mis-characterized. *See* Transcript of Oral Argument, 23-24.

## II.

In their Motion for Sanctions, relying on *Chambers v. NASCO, Inc.*, 501 U.S. 32,44-45, 51 (1991), the Defendants ask the Court to use its inherent power to dismiss this case with prejudice and award them attorney's fees and costs for what they allege is the Plaintiff's abuse of the judicial process. They claim that Plaintiff's purpose in engaging in this conduct is to obtain a large and unmerited settlement. "District judges have the inherent authority to impose sanctions–including dismissal–when a litigant engages in conduct that abuses the judicial process." *White v. Williams*, 423 F. App'x 645, 646 (7th Cir. 2011).

3

Specifically, the Defendants contend that Plaintiff's litigation tactics have included the following:

> libel, subornation of perjury, unfounded lawsuits against individuals, a spurious lawsuit in Ohio federal court, frivolous motions to the court, baseless EEOC Charges, baseless Charges to Wisconsin Equal Rights Division, Illinois Department of Human Rights, and Missouri Human Rights Department, request for U.S. Attorney investigation into criminal allegations, request for Wisconsin Office of Lawyer Regular investigation, repeated complaints to Defense Counsel's Managing Partner, complaint to Grange's Board of Directors, threats to run up defense costs, threats of sanctions, threats to sue potential witnesses if they fail to provide favorable evidence, threats to damage counsel's professional career, threats that Integrity executives and inside counsel will lose their jobs, and threats of criminal prosecution.

Defs' Mot. for Sanctions, at 2. Mr. Paul stated that since the motion was filed, the Plaintiff has supplemented various ethics and criminal complaints and also threatened to report him to the Illinois Attorney Registration and Disciplinary Commission. *See* Transcript of Oral Argument, 22. Both in their Motion for Preliminary Injunction and at the Hearing, the Defendants allege that although the Plaintiff sometimes represented in pleadings that he would not be seeking any sanctions, he immediately thereafter threatened the Defendants and their Counsel with sanctions, disbarment

4

and criminal activity.  Mr. Paul stated that Mr. Nieman has sent more than ten emails threatening sanctions.  *See* Transcript of Oral Argument, 10.

In a previous Order, the Court noted conduct on the part of the Plaintiff that appeared to be "deeply troubling."  *See* Order [d/e 69], at 3. For example, in their Motion for Sanctions, the Defendants allege that Plaintiff has accused Counsel and others of engaging in criminal conduct. In an email to Counsel's managing partner on August 2, 2012, the Plaintiff accuses Counsel and a witness of engaging in criminal misconduct.  *See* Defs.' Memo. in Supp. of Mot. for Sanctions, Ex. 33.  The Plaintiff further stated:

> While I am absolutely incensed by the conduct of your clients and Mr. Croysdale I would rather see finality in this case sooner rather than later.  Accordingly, I encourage you to discuss this matter with Mr. Croysdale and/or your clients to see if perhaps they should reconsider their current negotiations stance. Notwithstanding, I will be forwarding supplements to the U.S. Attorney and the Wisconsin ORC due to previous notifications, as the recent revelations strengthen my allegations and or concerns that perjury, witness intimidation, and /or witness bribery may well have occurred in this case as to Mr. Gipson, and perhaps beyond.

*Id*.  On July 29, 2012, the Plaintiff sent an email to a member of the Grange

5

Board of Directors stating that he had been unable to convince "the primary contacts or attorneys to take this case seriously."  He further warned of potential "catastrophic" exposure, "likely exposing Integrity and/or Grange to a potential jury verdict of seven figures or more, along with other related costs and damages." *See* Defs' Memo. in Supp. of Mot. for Sanctions, Ex. 31.

While motions to dismiss were pending in this case, on March 19, 2012, the Plaintiff emailed Counsel for the Defendants and said, in part:

> [T]he other challenge you face is that if your clients, or your firms, take part in unwarranted factual denials you will expose client and attorney alike to Rule 11 and/or section 1927 sanctions.  You may rest assured that I am very thorough in my inquiries, including discovery practice, and do not miss much. It is also a matter of public record that in the *Nationwide* matter the parties agreed to "amicably conclude" the case while two Plaintiff's motions were pending, one to compel discovery response/for sanctions and a second seeking second sanctions related to alleged evidence manufacturing.  As I recall the chronology, the parties agreed to conclude the dispute less than 30 days after that last pleading was filed.

*See* Defs.' Memo. in Supp. of Mot. for Sanctions, Ex. 9.

More recently, in a July 30, 2012 email to Counsel, the Plaintiff stated, in part:

6

> To the extent you are telling your clients they can win this case, I believe you are doing them, and yourself, a disservice. The wise opponent knows when to seek compromise and peace. Only a fool insists on waging a losing war to the end. If your clients insist on taking the latter route I suspect that it will damage and/or destroy one or more careers within Integrity/Grange. Additionally, it will likely do no good to your reputation, particularly if you are beaten by a pro se litigant.

*See* Defs.' Memo. in Supp. of Mot. for Sanctions, Ex. 30.

These are just some examples of correspondence from the Plaintiff wherein he has accused individuals of criminal acts and/or ethical violations. Based on the quoted passages and the other examples, it appears reasonable to infer that part of the Plaintiff's strategy throughout the litigation has been to use the threat of criminal liability and/or ethical sanctions in the hope of obtaining a favorable settlement.

### III.

The Court previously observed that it is also a very serious matter to harass a witness or accuse a witness of engaging in criminal conduct. The Plaintiff sent a letter dated Jun 28, 2012, to Jeff Gipson, an employment recruiter who was deposed in connection with this case. *See* Defs.' Memo. in Supp. of Mot. for Sanctions, Ex. 19. Mr. Nieman stated in part:

7

While I am not a lawyer, and cannot give you legal advice, your testimony leads me to believe that you are very much ignorant and/or misinformed about the nature of employment law and compliance issues, many of which would appear to relate directly to your occupation and company.  I would encourage you to seek out a reliable source of information as to this aspect.  If you do not, I fear that at some point you will be involved in a legal matter again, and lacking critical education and/or knowledge about these issues I anticipate that you may not be pleased with the process or the outcome. . . .

I also believe that honorable people sometimes make mistakes. To the extent that someone felt that they were under improper influence, either by way of promised or agreed incentives or as to fear of loss of business or damage to business prospects, one could understand how a reasonable person might be tempted by such things.  But in the context of a federal lawsuit and a sworn deposition it would seem that such temptations would need to be resisted fully.  However, if you made a very human error yesterday, or in the period leading up to your deposition, and wanted to take affirmative action to correct that error and set the record straight, it is possible that you may have that opportunity.  But I am also confident that were such a situation to occur, and as more and more time were to pass between the date of the error and the revelation of truth and/or omission, the ability to extricate one's self from the possible ramifications of such actions would appear to decline.  Accordingly, if any of this has occurred, you may well want to seek legal advice if it is your intent to try and correct such errors or omissions which may have occurred.

*Id*.  The quoted passages appear to be a rather blatant attempt to persuade the witness to change his testimony.  On July 27, 2012, the Plaintiff

8

emailed Mr. Gipson to threaten legal action. *See* Defs.' Memo. in Supp. of Mot. for Sanctions, Ex. 27. The Plaintiff filed an EEOC charge against Gipson and requested dual filings with the Missouri Human Rights Commission and the Illinois Department of Human Rights, stating that "these actions represent some of the worst possible acts imaginable by Mr. Gipson, or his apparent co-conspirators, that could possibly be admitted within an employment discrimination and/or retaliation matter." *Id*.

On July 29, 2012, the Plaintiff sent a letter to the United States Attorney of the Central District of Illinois. Mr. Nieman accuses Counsel and employees of the Defendant of "persuad[ing] and/or intimidat[ing]" Mr. Gipson into committing perjury. *See* Defs. Memo. in Supp. of Mot. for Sanctions, Ex. 29. The letter states that "Gipson likely knowingly committed perjury by the way of making false statements, by withholding material information, and/or by falsely asserting a lack of knowledge or recollection one or more times during his deposition of June 28, 2012." *Id*.

The Plaintiff informed the Court that the U.S. Attorney forwarded his letter to the Federal Bureau of Investigation. Mr. Nieman further stated

that the FBI was not conducting an investigation at this time.  The Plaintiff

provided the case number and related information and was told by Special

Agent Moody that the FBI would monitor the case.  *See* Transcript of Oral

Argument, 26-27.

On July 31, 2012, Mr. Nieman emailed Mr. Gipson and stated in

part:

> My EEOC charge against you (delivered yesterday) and the
> referral to the U.S. Attorney (hand delivered yesterday) are no
> joke.  But I have nothing against you and do not wish to see
> you damaged or destroyed to the extent that you made one or
> more mistakes in trying to accommodate the requests of a
> valued client as you try to make a living for yourself and your
> family in a challenging economy.  I believe seriously however
> that if you hold firm to your story, which obviously has serious
> issues as to credibility, and if you repeat these statements in
> federal court that you may end up doing something that cannot
> be undone and which could end up resulting in very serious
> consequences for you if you indeed have committed and/or were
> to commit perjury by way of such testimony.

*See* Defs' Memo. in Supp. of Mot. for Sanctions, Ex. 32.  Moreover, the

Plaintiff encouraged Mr. Gipson to tell the truth, stating that if his

"recollections and/or records indeed confirm what [Mr. Nieman] believe[s]

they will, then it "will allow us all to avoid the stress of a trial."  *Id*.  It is

difficult to interpret this as anything but an effort to harass or intimidate a witness.

The Plaintiff accused Mr. Gipson of claiming a "false lack of recollection" at his deposition of June 28, 2012, apparently due to his stated failure to remember certain details about a couple of brief telephone calls that had occurred more than 20 months earlier.  Mr. Paul stated that Mr. Gipson was asked 260 substantive questions.  Mr. Gipson responded that he did not know the answer or could not recall as to 31 of the questions.  This is unremarkable for an employment recruiter who probably spends a significant amount of time on the telephone.  It would not at all seem unusual for a witness to answer "I don't know" or "I don't recall" or to forget certain details, particularly about what might be described as a couple of routine business calls that had occurred almost two years earlier.  According to Mr. Paul, the telephone calls were approximately ten minutes and one minute in length.  *See* Transcript of Oral Argument, 17.  As to one call, the dispute was over who called whom.  *Id*.  The other issue involved whether Mr. Gipson recalled calling an Integrity executive after talking to

the Plaintiff. *Id*. at 18.

While the Plaintiff may view these phone calls to be particularly significant, an employment recruiter might view them as no different than any number of business calls that he is a party to on a daily basis. Mr. Gipson may well have participated in hundreds or thousands of similar telephone calls in the almost two years since the calls in question. Thus, it might be more surprising if he accurately recalled the details of the conversation. It is a very serious matter to accuse a witness of committing perjury or related crimes. Based on the information before the Court, the Plaintiff's accusations related to Mr. Gipson's testimony certainly appear to be entirely inappropriate.

## IV.

The Plaintiff denies the Defendants' assertions and claims that he has not engaged in a scheme to harass or threaten parties, non-parties and Counsel in the hopes of obtaining a settlement. However, it is difficult to draw any other conclusion when reading the emails and other correspondence which are attached to the Defendants' Memorandum. As

Mr. Paul noted, the Plaintiff did not really address those documents at the Hearing.

Attached to the Plaintiff's Response to the Motion for Sanctions are several Exhibits. Several of the Exhibits are email exchanges between Counsel for the Defendants and the Plaintiff. The Plaintiff states that he has had to "endure repeated personal attacks and abuse," specifically referring to some of these emails. *See* Pl. Opp. to Defs' Mot. for Sanctions, at 6. It is apparent from these exchanges that Counsel was angry and perhaps increasingly frustrated because of some of the previously discussed examples of the Plaintiff's conduct in this case. This is not at all surprising, given that many of the emails were sent in the days immediately prior to the date on which the Defendants' Motion for Sanctions was filed.

Exhibit 7 to the Plaintiff's Response is a copy of a certified letter (which was also sent via email) from Counsel to the Plaintiff demanding that Plaintiff retract what Counsel viewed as libelous statements about his clients. The letter is dated August 7, 2012, which is the same date that the Motion for Sanctions was filed, and approximately one week after the

13

Plaintiff contacted the U.S. Attorney to request an investigation into what the Plaintiff believed were criminal acts on the part of Counsel, a witness, and individuals associated with the Defendants.  Based on Counsel's belief that he and his clients had recently been libeled, the tenor of his correspondence with the Plaintiff might be expected.

## V.

The Court has noted only some of the conduct that appears to be deeply troubling.  Several of the matters raised in the Defendants' motion have not been addressed.  The Court recognizes that it has significant discretion in imposing sanctions.  The Defendants request that the Court dismiss with prejudice the Plaintiff's Complaint and award the Defendants their attorney's fees and costs.

The Court declines to dismiss the Complaint at this time.  Because of the Plaintiff's Pro Se status, the Court finds that it would be inappropriate to dismiss the action without first warning the Plaintiff.  The Plaintiff is hereby placed on notice that litigation tactics which are harassing and intimidating will not be tolerated and may result in dismissal.  The Court

has recognized that Plaintiff appears to be more able than most Pro Se litigants and is familiar with federal court procedure and the relevant substantive law.

The Motion for Sanctions will be Denied in Part, to the extent that it seeks dismissal.  It will otherwise be held in abeyance.  However, the Plaintiff is placed on notice that the Court will not hesitate to exercise its inherent powers to impose appropriate sanctions, including dismissal, for conduct that is particularly harassing, contumacious, or for any action which is taken in bad faith.  Other potential sanctions include the assessment of attorney's fees and costs which are incurred as a result of such conduct.

The Court notes that Defendants sought and obtained an Injunction pending a ruling on their Motion for Sanctions.  Because the Court is ruling, in part, on the Motion for Sanctions, it will lift the Injunction.  As with sanctions, however, the Court will not hesitate to enter another Injunction should the Plaintiff engage in inappropriate and/or harassing litigation tactics.

<u>Ergo</u>, the Motion for Preliminary Injunction [d/e 66] is DENIED.

The Temporary Injunction previously entered is Vacated.

The Motion for Sanctions [d/e 62] is DENIED IN PART, to the extent that the Motion requests dismissal.  It is otherwise held in Abeyance.

The stay on any filings is hereby Vacated.

IT IS SO ORDERED.

ENTER: August 31, 2012

FOR THE COURT:

_s/Richard Mills_____

Richard Mills
United States District Judge